**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PENNY EARLE,                          )
                                      )
                        Plaintiff,    )
                                      )        Case No. 1:21-cv-5816
            vs.                       )
                                      )
COMMUNITY LOAN SERVICING, LLC f/k/a   )
BAYVIEW LOAN SERVICING, LLC, M&M      )
MORTGAGE SERVICES, INC., and JOHN     )
DOES 1-10,                            )
                                      )
                        Defendant.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND
TO PLAINTIFF'S COMPLAINT**

Defendant, M&M Mortgage Services, Inc. ("Defendant"), by and through its attorneys Justin

M. Penn and Louis J. Manetti, Jr. of Hinshaw & Culbertson LLP, and for its Answer, Affirmative

Defenses, and Jury Demand to Plaintiff's Complaint, hereby states as follows:

**NATURE OF THE CASE**

1.  Plaintiff brings this class action seeking redress for violations of the Illinois Consumer

Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, trespass to real property,

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and intrusion

upon seclusion.

**ANSWER: Defendant admits that Plaintiff brings this lawsuit under the ICFA, trespass to

real property, the FDCPA, and intrusion upon seclusion, but Defendant denies that it violated

any law or statute, denies that it is liable to Plaintiff, and denies the remaining allegations in

this paragraph, if any.**

2. Plaintiffs' claims stem from Defendants' systemic conduct in unlawfully changing the locks

of consumers' properties without a valid factual and legal basis to do so. As set forth herein,

Defendants, without **any** notice to Plaintiff, changed the lock to Plaintiff's home over a **single** missed mortgage payment, leaving Plaintiff without access to her home for eighteen (18) days.

**ANSWER: Defendant denies the allegations in this paragraph.**

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's FDCPA claim pursuant to 28 U.S.C. §1331.

**ANSWER: Subject to its affirmative defenses, Defendant does not contest jurisdiction.**

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

**ANSWER: Subject to its affirmative defenses, Defendant does not contest jurisdiction.**

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**ANSWER: Defendant does not contest venue.**

## PARTIES

6. Plaintiff is natural person that resides at a property located at 6824 S. Wood Street, Chicago, IL 60636 ("subject property" or "Plaintiff's home").

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

7. Plaintiff is a 74-year-old retired woman with limited financial means.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

8. Community Loan Servicing, LLC ("CLS") f/k/a Bayview Loan Mortgage Loan Servicing, LLC ("Bayview") is a national mortgage servicer based out of Coral Gables, Florida.

CLS acquires and services mortgage loans that were originated by a third party, including mortgage loans extended to Illinois consumers. CLS does business in Illinois and is registered with the Illinois Secretary of State.[1]

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

9. M&M Mortgage Services, Inc. ("M&M") is a property preservation company based out of Miami, Florida. M&M provides property preservation services to mortgage loan servicers. M&M provides property preservation services to mortgage servicers that service mortgage loans extended to Illinois consumers.

**ANSWER: Defendant admits that it is a property preservation company, and that, in certain circumstances and in certain instances, it provides property preservation services to mortgage loan servicers that service mortgage loans extended to Illinois consumers. Defendant denies the remaining allegations in this paragraph, if any.**

10. John Does 1-10 are unknown entities and/or individuals that were hired by M&M to perform property preservation services at the subject property. John Does 1-10 will be identified through the discovery process. Once identified, Plaintiff will amend her complaint to identify John Does 1-10 by name.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

---

[1] Most of the conduct that gives rise to Plaintiff's claims took place prior to Bayview changing its name to Community Loan Servicing, LLC.

## FACTUAL ALLEGATIONS

11. On February 24, 1994, Plaintiff obtained a mortgage loan ("subject loan") in the amount of $43,500 from The First National Bank of Chicago ("FNBC") to finance the purchase of the subject property, which served and continues to serve as Plaintiff's principal residence.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

12. The subject loan is secured by the subject property.

**ANSWER: Defendant admits the allegations in this paragraph.**

13. Pursuant to the terms of the loan, Plaintiff was obligated to make monthly principal and interest payments in the initial amount of $301.19 for 30 years.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

14. At some point in time Fannie Mae acquired the subject loan and became the owner of the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

15. On January 2, 2019, Fannie Mae assigned servicing rights to the subject loan to Bayview and Bayview became the new servicer for the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

16. At the time Bayview began servicing the subject loan, Bayview's records indicated that the subject loan was in default and Bayview treated it as such by immediately sending Plaintiff default notices.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

17. The default notices alleged that Plaintiff was in default on the subject loan and explicitly stated Bayview is "a debt collector" and the default notices were "an attempt to collect a debt and all information obtained will be used for that purpose."

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18. On May 15, 2019, Bayview sent Plaintiff a mortgage statement alleging that Plaintiff was past due in the amount of $1,261.80. The mortgage statement further reflected that Bayview assessed a $11.00 "property inspection" fee to the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

19. On June 14, 2019, Bayview sent Plaintiff a mortgage statement alleging that Plaintiff was past due in the amount of $1,272.80. The mortgage statement further reflected that Bayview assessed another $11.00 "property inspection" fee to the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

20. On July 15, 2019, Bayview sent Plaintiff a mortgage statement alleging that Plaintiff was past due in the amount of $699.46.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

21. Shortly thereafter, without notice to Plaintiff, Bayview directed M&M to change the locks of Plaintiff's home.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

22. At all times relevant, Plaintiff's grandson, Steven Afermaan ("Steven"), resided at the subject property with Plaintiff.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

23. On July 27, 2019, Steven was returning to the subject property and witnessed M&M's agents (two Hispanic men) changing the lock to the front door of the subject property.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

24. Steven immediately noticed that M&M's agents damaged the front door in the process of changing the lock.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

25. Steven confronted M&M's agents and inquired as to the reason they were changing the lock.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

26. In response, M&M's agents advised Steven that they don't speak English and are unable to comprehend his questions.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

27. At this point, Steven believed that he walked in on the commission of a crime and called the Chicago Police Department to report the criminal conduct.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

28. When the police officers arrived, Steven explained to the police officers that the subject property was his grandmother's house and that M&M's agents were tampering with the lock without Plaintiff's knowledge or authorization.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

29. While the police officers were at the subject property, Steven called Plaintiff and notified Plaintiff of the events at her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30. Plaintiff asked to speak to the police officers and Steven gave his phone to the police officers so Plaintiff can speak to the police officers.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31. Plaintiff advised the police officers that she did not authorize any work to be done on her home and that M&M's agents were there without her knowledge and authority.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32. The police officers asked Plaintiff if she was late on her mortgage payments and Plaintiff responded that she was one month behind.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33. Upon hearing that Plaintiff was one month behind, the police officers immediately assumed that M&M's agents work for Plaintiff's mortgage company and advised Plaintiff to call her mortgage company.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

34. The police officers tried to ask M&M's agents questions regarding the reason they were there but were unable to comprehend their responses due to the language barrier.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

35. Shortly thereafter, the police officers ordered M&M's agents to leave the subject property and M&M's agents complied with the polices officers' order.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

36. Notably, Plaintiff was only **$699.46** past due on the subject loan at the time Bayview ordered M&M to change the locks.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

37. After Plaintiff got off the phone with the police officers, she immediately tried calling Bayview but was unable to reach a representative, as July 27, 2019 was a Saturday.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

38. On July 29, 2021 (Monday), Plaintiff called Bayview (1) to determine the reason Bayview changed the lock to the front door of her home and (2) to obtain the keys to the lock so she can access her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39. Upon speaking to a Bayview representative, Plaintiff was informed that Bayview ordered the lock change because Bayview deemed the property as "not secured" and "inhabitable."

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40. In response, Plaintiff advised Bayview that the subject property was not only secure, but also occupied and in great condition.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41. Plaintiff then requested that Bayview provide her access to her home as soon as possible. In response, Bayview advised it would send an agent to the subject property to change the damaged door and provide Plaintiff with access to her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

42. Despite Bayview's assurance that it would repair the door promptly, it failed to do so in a reasonable time period.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

43. Accordingly, Plaintiff was not able to access her home from July 27, 2019 through August 13, 2019.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

44. During that time period, Plaintiff was forced to rent housing for $1,350.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

45. On or about August 13, 2019, Bayview installed a new door and lock and finally granted Plaintiff access to her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

46. Between August 2019 and the present, Plaintiff repeatedly contacted Bayview via phone calls and written correspondences regarding her grievances pertaining to the unauthorized lockout and demanded reimbursement for the $1,350 rent she was required to pay during the lockout period.[2]

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

47. In response to Plaintiff's grievances, CLS/Bayview repeatedly refused to (1) accept responsibility for the lockout; and (2) reimburse Plaintiff for the rent she was required to pay as a result of the lockout.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

48. In light of CLS/Bayview's utter refusal to address Plaintiff's grievances, Plaintiff retained to counsel to address her grievances with CLS/Bayview.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

---

[2] Bayview changed its name to Community Loan Servicing, LLC in September 2020.

49. In February 2021, Plaintiff, through her counsel, mailed CLS a Request for Information pursuant to the Real Estate Settlement Procedures Act ("RESPA") requesting information pertaining to the subject loan, including information pertaining to the lockout.[3]

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

50. On March 1, 2021, CLS received Plaintiff's RFI.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

51. Pursuant to RESPA, CLS had 30 days to respond to Plaintiff's RFI.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

52. On April 13, 2021, CLS responded to Plaintiff's RFI. In response to Plaintiff's RFI, CLS did not produce most of the requested information, including (1) the work orders related to the lockout; (2) account notes for the subject loan; (3) mortgage statements for the time period requested in the RFI; and (4) explanation/itemization of various fees assessed to the subject loan (e.g. "Rec Corp Advance").

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

53. The RFI response revealed that Bayview ordered the lockout despite having actual knowledge that the subject property was in "good condition" and not in need of preservation services.

---

[3] At the time Plaintiff sent the RFI, Bayview had changed its name to Community Loan Servicing, LLC.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

54. Specifically, the RFI response contained inspection reports dated May 10, 2019 and July 14, 2019 that stated that the property was in "good condition."

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

55. The RFI response further revealed that CLS/Bayview continued charging the subject loan "inspection fees" while Plaintiff was current on her mortgage payments.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

56. Specifically, despite Plaintiff being current on her mortgage payments, CLS continuously and erroneously alleged that the subject loan was in default as a result of a phantom "Rec Corp Advance" fee of $948.00.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

57. Specifically, all of CLS' mortgage statements sent to Plaintiff from January 1, 2021 through the present demanded payment of the "Rec Corp Advance" fee of $948.00.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

58. In response to multiple inquiries made by Plaintiff regarding the phantom "Rec Corp Advance" fee, CLS falsely advised Plaintiff that the fee was for inspection fees. However, the fee could not have been for inspection fees because CLS' mortgage statements separately itemized any inspection fees that were charged to the subject loan. Accordingly, CLS repeatedly failed to provide Plaintiff with a valid explanation for the fee that was causing CLS to deem the

subject loan in default.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

59. The phantom "Rec Corp Advance" fee of $948.00 triggered other default fees being assessed to the subject loan, including inspection fees and late fees.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

60. To this date, CLS continues to (1) erroneously treat the subject loan as in default despite the fact that Plaintiff is current on her mortgage payment and (2) assess erroneous fees to the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

61. At all times relevant, Plaintiff was the legal owner of the subject property.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

62. At all times relevant, the subject property was fully furnished.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

63. At all times relevant, the subject property was in good condition and was not in need of any repairs or preservation services.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

64. At all times relevant, Defendants did not have authority to change the lock to the subject property.

**ANSWER: Defendant denies the allegations in this paragraph.**

65. At all times relevant, Defendants did not notify Plaintiff that it will be changing the lock on the subject property.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

66. At no point in time did Defendants contact Plaintiff to inquire on the occupancy status or condition of the subject property.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

67. At no point in time did Defendants notify Plaintiff that it would be sending representatives to the subject property to determine the occupancy status or condition of the subject property.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

68. At all times relevant, CLS/Bayview had a consensual agency relationship with M&M whereby CLS/Bayview (as the principal) had the right to control and direct the activities of M&M, and M&M had the authority to act on behalf of CLS/Bayview. CLS/Bayview, as the principal of M&M, is liable for the acts of M&M and its agents.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

69. At all times relevant, M&M had a consensual agency relationship with John Does 1-10 whereby M&M (as the principal) had the right to control and direct the activities of John Does 1-10, and John Does 1-10 had the authority to act on behalf of M&M. M&M, as the principal of John Does 1-10, is liable for the acts of John Does 1-10 and their agents.

**ANSWER: Defendant denies that the allegations in this paragraph accurately characterize Defendant's actions when considered as a whole.**

70. Upon information and belief, Defendants do not have a license to change locks as required by the Illinois Locksmith Act.

**ANSWER: Defendant denies the allegations in this paragraph.**

<u>DAMAGES</u>

71. Plaintiff has suffered significant damages that were proximately caused by Defendants' conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

72. As a result of Defendants' conduct, Plaintiff suffered extreme emotional distress, anxiety, mental anguish, and pain and suffering resulting from (a) the constant fear that her locks will be changed again if she misses a **single** mortgage payment; and (b) the deprivation of the sense of security and safety in her home.

**ANSWER: Defendant denies the allegations in this paragraph.**

73. As a result of Defendants' conduct, Plaintiffs lost access and utilization of her home from July 27, 2019 through August 13, 2019.

**ANSWER: Defendant denies the allegations in this paragraph.**

74. As a result of Defendants' conduct, Plaintiff has permanently lost the sense of security and safety in her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

75. As a result of Defendants' conduct, Plaintiff permanently lost the comfort and enjoyment of her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

76. As a result of Defendants' conduct, Plaintiff suffered from nightmares involving unauthorized entries into her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

77. As a result of Defendants' conduct, Plaintiff suffered out of pocket expenses, including $1,350 to rent housing while she was locked out of her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

78. As a result of Defendant's conduct, Plaintiff's front door was significantly damaged.

**ANSWER: Defendant denies the allegations in this paragraph.**

79. As a result of Defendants' conduct, Plaintiff expended significant time and energy attempting to resolve the issues caused by the unauthorized lockout.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

80. As a result of Defendants' conduct, Plaintiff suffered public humiliation and embarrassment arising from the police presence at her home due to an alleged default on her mortgage.

**ANSWER: Defendant denies the allegations in this paragraph.**

81. Moreover, CLS/Bayview's conduct has resulted in a loss of equity in Plaintiff's home. Specifically, CLS continues to charge the subject loan (1) late fees, (2) inspection fees, and (3) other fees associated with defaulted loans. The imposition of the fees increases the balance of the subject loan, thus decreasing Plaintiff's equity in her home.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

82. Plaintiff has expended dozens of hours dealing with CLS/Bayview's mishandling of the subject loan.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

83. Plaintiff continues to live in perpetual fear of losing her home due to CLS/Bayview's unrelenting efforts to deem the subject loan in default through the assessment of erroneous default fees.

**ANSWER: Defendant denies the allegations in this paragraph.**

84. CLS/Bayview has falsely reported the subject loan as in default to the credit reporting agencies, therefore adversely impacting Plaintiff's credit worthiness and frustrating Plaintiff's ability to obtain credit.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

<u>**CLASS ALLEGATIONS**</u>

85. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Defendant hereby repeats and restates its answers to all paragraphs of this Complaint as if fully set forth herein.**

83. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class"). The Putative Class is defined as follows:

> All individuals in the State of Illinois (1) who have/had a mortgage loan serviced by CLS/Bayview; (2) in which CLS/Bayview or its third

party vendors, including M&M; (3) changed the lock(s) to the door(s) of the individual's real property; (4) without the individual's consent or authorization; (5) at a time when the underlying mortgage loan was less than 6 months in default; (6) within the three years preceding the date of this complaint through the date of class certification.

**ANSWER: Defendant admits that Plaintiff brings this case as a class action but denies that this case is appropriate for class-wide determination, denies that it is liable to Plaintiff or any putative class member, and denies the remaining allegations in this paragraph, if any.**

84. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

**ANSWER: Defendant admits that Plaintiff brings this case as a class action but denies that this case is appropriate for class-wide determination, denies that it is liable to Plaintiff or any putative class member, and denies the remaining allegations in this paragraph, if any.**

**A. Numerosity**

85. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

**ANSWER: Defendant denies the allegations in this paragraph.**

86. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and will be determined through discovery.

**ANSWER: Defendant admits that Plaintiff brings this case as a class action but denies that this case is appropriate for class-wide determination, denies that it is liable to Plaintiff or any putative class member, and denies the remaining allegations in this paragraph, if any.**

87. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

**ANSWER: Defendant denies the allegations in this paragraph.**

88. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendants.

**ANSWER: Defendant denies the allegations in this paragraph.**

**B. Commonality and Predominance**

89. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class.

**ANSWER: Defendant denies the allegations in this paragraph.**

90. Those questions predominate over any questions that may affect individual members of the Putative Class.

**ANSWER: Defendant denies the allegations in this paragraph.**

**C. Typicality**

91. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendants' conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

**D. Superiority and Manageability**

92. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

**ANSWER: Defendant denies the allegations in this paragraph.**

93. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

**ANSWER: Defendant admits that Plaintiff brings this case as a class action but denies that this case is appropriate for class-wide determination, denies that it is liable to Plaintiff or any putative class member, and denies the remaining allegations in this paragraph, if any.**

94. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**ANSWER: Defendant denies the allegations in this paragraph.**

95. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**ANSWER: Defendant denies the allegations in this paragraph.**

**E. Adequate Representation**

96. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

**ANSWER: Defendant denies the allegations in this paragraph.**

97. Plaintiff has no interests antagonistic to those of the Putative Class and Defendants have no defenses unique to Plaintiff.

**ANSWER: Defendant denies the allegations in this paragraph.**

98. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

**ANSWER: Defendant denies the allegations in this paragraph.**

**COUNT I – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**

**DECEPTIVE BUSINESS PRACTICES ACT**

**(On behalf of Plaintiff and the Members of the Putative Class against CLS/Bayview)**

99. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Defendant hereby repeats and restates its answers to all paragraphs of this Complaint as if fully set forth herein.**

100. Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

101. Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

101. CLS is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

102. M&M is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

103. John Does 1-10 are engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

104. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

105. CLS/Bayview violated ICFA (815 ILCS 505/2) by engaging in the following conduct in the course of mortgage servicing and/or property management/preservation services:

a. Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy or use the subject property when Plaintiff is, in fact, entitled to occupy and use the Property;

b. Taking possession of Plaintiff's home without a factual or legal basis;

c. Taking control and asserting dominion over the Plaintiff's home without a court order authorizing the same;

d. Employing self-help and taking possession of Plaintiff's home outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel

22

occupants to abandon mortgaged property);

e. Changing the lock of Plaintiff's home;

f. Damaging/destroying the door of Plaintiff's home;

g. Exhibiting dominion and control over Plaintiff's home, and implying that Plaintiff has lost her ownership rights to her home;

h. Failing to adequately manage, supervise and train their employees/agents in the performance of property inspection and preservation services;

i. Committing unlawful trespass under the false pretext that such trespass was authorized by law or the underlying mortgage;

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

106. It was unfair and deceptive for CLS/Bayview to deem Plaintiff's home unsecured, abandoned, or vacant when Defendants had actual knowledge that Plaintiff's home was not unsecured, abandoned, or vacant and that Plaintiff occupied the property.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

107. It was unfair and deceptive for CLS/Bayview to unilaterally deem Plaintiff's home as in need of preservation services when Plaintiff's home was conspicuously occupied and in good condition.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

108. It was unfair for CLS/Bayview to change the lock of Plaintiff's home over **one** missed mortgage payment.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

109. Defendants' course of conduct was intended to be relied upon by Plaintiff and to buffalo and bully Plaintiff into giving up her possessory rights over **one** missed mortgage payment.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

110. Plaintiff relied upon these acts and was deceived into questioning the legal status of the ownership of her home, doubting her right to own and use her home free of invasion, believing a court order was unnecessary, becoming afraid to live in her home, and losing the peaceful enjoyment and solitude of her home.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

111. CLS/Bayview's conduct offends public policy as it demonstrates a widespread practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, circumventing the legal foreclosure process, and profiting from the expedited sale of real property. *See Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013) ("A practice that attempts to circumvent the foreclosure process established by Illinois law is against the public policy of Illinois).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

112. Moreover, CLS/Bayview's conduct in bullying Plaintiff out of her home in an effort to induce Plaintiff to abandon her home in order to obtain a finding of abandonment is a crime under Illinois law. *See* 735 ILCS 5/15-1104 ("any person....who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment....shall be guilty of a class B misdemeanor.")

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

113. The commission of such crime clearly violates public policy.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

114. Plaintiff had no choice but to submit to CLS/Bayview's conduct. Specifically, Plaintiff had no control over (1) the changing of the lock; (2) damage to her front door; and (3) her inability to access her home.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

115. CLS/Bayview's course of conduct is part of a pattern and practice of behavior that Defendants routinely engage in.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

116. As pled above, Plaintiff was significantly harmed by CLS/Bayview's conduct.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

117. CLS/Bayview course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

i. to be safe and secure in their own homes;

ii. their mortgage companies to not change the locks of their homes over a de minimis default;

iii. their mortgage companies to provide notice to them before unilaterally changing the locks;

iv. their mortgage companies to truthfully and transparently communicate with them regarding the occupancy status of their home or any claims of abandonment/vacancy;

v. their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from into giving up their homes;

vi. their mortgage companies to follow state and federal law and their own guidelines;

vii. their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines; and

viii. their mortgage companies will not take illegal action to expedite a foreclosure and bully consumers from their property.

118. An award of punitive damages is appropriate because CLS/Bayview's conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of Plaintiff, and was designed to take advantage of a vulnerable elderly woman.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

119. Punitive damages would serve the interests of Illinois consumers in that it would serve to deter similar misconduct in the future.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

## COUNT II – TRESPASS TO REAL PROPERTY

### (Plaintiff Individually Against All Defendants)

120. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Defendant hereby repeats and restates its answers to all paragraphs of this Complaint as if fully set forth herein.**

121. To prevail on a trespass claim "a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).

**ANSWER: Defendant admits that the allegations in this paragraph purport to cite to case law, but denies that the allegations in this paragraph accurately characterize the state of the law when considered as a whole.**

122. At all times relevant, Plaintiff owned the subject property and had a legal right to exclusive possession of the subject property.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

123. Defendants had actual knowledge that Plaintiff owned and occupied the subject property.

**ANSWER: Defendant denies the allegations in this paragraph.**

124. Without authorization or a right to possession, Defendants intentionally assumed dominion and control over the subject property.

**ANSWER: Defendant denies the allegations in this paragraph.**

125. Without authorization or a right to possession, Defendants intentionally intruded on Plaintiff's interest and exclusive possession of her home.

**ANSWER: Defendant denies the allegations in this paragraph.**

126. Without authorization or a right to possession, Defendants placed a lock on the front door of the subject property, thus depriving Plaintiff of access to the subject property.

**ANSWER: Defendant denies the allegations in this paragraph.**

127. Defendants' trespass upon the subject property interfered with Plaintiff's exclusive possession of her home.

**ANSWER: Defendant denies the allegations in this paragraph.**

128. Upon information and belief, it is Defendants' normal business practice to willfully ignore possessory and ownership rights of homeowners, and to unlawfully take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

**ANSWER: Defendant denies the allegations in this paragraph.**

129. As pled above, Plaintiff was significantly harmed by Defendants' conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

## COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### (Plaintiff Individually Against CLS)

130. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Defendant hereby repeats and restates its answers to all paragraphs of this Complaint as if fully set forth herein.**

131. The subject loan is a "debt" as defined by § 1692a(5) of the FDCPA because the mortgage debt was incurred to finance the purchase of Plaintiff's principal residence, and therefore incurred for "personal, family, or household" purposes.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

132. CLS is a "debt collector" as defined by § 1692a(6) of the FDCPA because it uses instrumentalities of interstate commerce or the mails to collect debts and enforce security interests.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

133. CLS is a "debt collector" as defined by § 1692a(6) of the FDCPA because its principal business purpose is the collection of debts.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

134. CLS is a "debt collector" as defined by § 1692a(6) of the FDCPA because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

135. CLS is a "debt collector" because it treated the subject loan as in default as soon as it acquired and/or began servicing the subject loan.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

136. At all times relevant, CLS was attempting to collect a debt allegedly owed by Plaintiff (principal, interest, past due amounts, etc.)

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

137. CLS' conduct as set forth herein violated 15 U.S.C. §§ 1692e, 1692e(2), 1692 e(8), 1692e(10), 1692f, and 1692f(1).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

**a. Violations of § 1692e, e(2)(A), e(8), and e(10)**

138. Pursuant to § 1692e of the FDCPA, a debt collector is prohibited from making "any false, deceptive, or misleading representation" in connection with the collection of a debt. 15 U.S.C. § 1692e.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

139. Pursuant to § 1692e(2)(A) of the FDCPA, a debt collector is prohibited from making false representations regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

140. Pursuant to § 1692e(8) of the FDCPA, a debt collector is prohibited from "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."15 U.S.C. § 1692e(8).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

141. Pursuant to § 1692e(10) of the FDCPA, a debt collector is prohibited from using any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(5).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

142. CLS violated §§ 1692e, e(2), and e(10) by falsely representing to Plaintiff that the subject loan was in default when in fact that the subject loan was current. Specifically, CLS continuously and falsely represented to Plaintiff that (1) she owed a phantom "Rec Corp Advance" fee of $948.00 and (2) the fee was for inspection fees. However, the fee could not have been for inspection fees because CLS' statements separately and conspicuously itemized inspection fees. Accordingly, CLS' representation that the "Rec Corp Advance" was for inspection fees was demonstrably false and misleading.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

143. CLS violated §§ 1692e, e(2), and e(10) by misrepresenting the amount of the alleged debt owed by Plaintiff. Specifically, CLS continuously inflated the amounts owed by Plaintiff on the subject loan by demanding payment of the phantom "Rec Corp Advance" fee of $948.00.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

144. CLS violated § 1692e(8) by falsely reporting to the credit bureaus that Plaintiff was delinquent on the subject loan when in fact Plaintiff was current on the subject loan.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

**b. Violations of §§ 1692f and f(1)**

145. Pursuant to § 1692f of the FDCPA, a debt collector is prohibited from using unfair or unconscionable means to collect a debt.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

146. Pursuant to § 1692f(1) of the FDCPA, a debt collector is prohibited from collecting any amount unless such amount is expressly authorized by contract or permitted by law.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

147. CLS violated § 1692f by employing unfair and unconscionable means to collect the subject loan.

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

148. CLS violated §§ 1692f and f(1) by collecting and attempt to collect amounts not authorized by the terms of the subject loan or permitted by law, including (1) the unauthorized "Rec Corp Advance" fee of $948.00 and (2) other erroneous default fees that were triggered by the unauthorized "Rec Corp Advance" fee (e.g. inspection fees, etc).

**ANSWER: Defendant makes no response to the allegations in this paragraph because it makes no allegations against Defendant. To the extent this paragraph makes allegations against Defendant, Defendant denies the allegations in this paragraph.**

## COUNT IV - INTRUSION UPON SECLUSION

### (Plaintiff Individually Against All Defendants)

149. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER: Defendant hereby repeats and restates its answers to all paragraphs of this Complaint as if fully set forth herein.**

149. To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd.*, 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

**ANSWER: Defendant admits that the allegations in this paragraph purport to cite to case law, but denies that the allegations in this paragraph accurately characterize the state of the law when considered as a whole.**

150. Defendants intruded into Plaintiff's seclusion by changing the lock to the front door of Plaintiff's home and damaging the same.

**ANSWER: Defendant denies the allegations in this paragraph.**

151. Defendants' conduct would be highly offensive to a reasonable person.

**ANSWER: Defendant denies the allegations in this paragraph.**

152. There could no question that the matter intruded upon (Plaintiff's home) was private.

**ANSWER: Upon reasonable inquiry, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

153. As pled above, Plaintiff was significantly harmed by Defendants' conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

<u>**AFFIRMATIVE DEFENSES**</u>

**First Affirmative Defense – Standing**

Defendant asserts that Plaintiff lacks standing to bring the instant claims because Plaintiff has no injury in fact, and thus she has no standing under Article III of the United States Constitution.

**Second Affirmative Defense – Defenses Unique to Class**

Defendant states that additional affirmative defenses may exist as to individual class members in the event (and to the extent) a class is certified, such as the Voluntary Payment Doctrine, res judicata, litigation privilege, the Rooker-Feldman Doctrine, class members who filed for bankruptcy, estoppel, and other individual defenses not presently known.

**JURY DEMAND**

Defendant demands a jury trial pursuant to Fed. R. Civ. P. 38.

WHEREFORE, Defendant, M&M MORTGAGE SERVICES, INC., respectfully requests that the Court dismiss the Complaint in its entirety, enter judgment in favor of Defendant on Plaintiff's Complaint, and grant such other and further relief in its favor as the Court deems just and proper.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *Louis J. Manetti, Jr.*
Louis J. Manetti, Jr.

Justin M. Penn
Louis J. Manetti, Jr.
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
jpenn@hinshawlaw.com
lmanetti@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that January 18, 2022, I electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, the foregoing **ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT** by using the CM/ECF system, which will send notification of such filing(s) to all counsel of record listed below:

Mohammed O. Badwan, Esq.

Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
mbadwan@sulaimanlaw.com

/s/ Louis J. Manetti, Jr.